**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**HERIBERTO NIEVES-DOMINGUEZ,**

PLAINTIFF

V.

**COMMONWEALTH OF PUERTO RICO ET AL.**

DEFENDANTS

**Civil No**. 16-2878 (DRD)

## OMNIBUS OPINION AND ORDER

On October 27, 2016 Plaintiff Heriberto Nieves-Dominguez (hereinafter "Plaintiff") filed a Complaint, under 42 U.S.C § 1983, against various Defendants (hereinafter, "Defendants"), including the Government of the Commonwealth of Puerto and its representatives, both in their personal capacity and official capacity. *See* Docket No. 2.

> Since December, 2006, the Petitioner/Plaintiff is confined under the supervision of the Puerto Rico Department of Correction and Rehabilitation as found guilty of criminal charges of First Degree Murder and Weapons Laws Violation. Ever since that day he has been classified as maximum custody according to the sentence and seriousness of the committed crimes. In accordance to the regulations of such government agency, the Petitioner appears before a Classification and Treatment Committee that determined to have Petitioner remain under maximum custody ignoring the process that the Plaintiff/Petitioner has gone through since his confinement. Therefore, appeared before the Honorable Circuit of Appeals of Puerto Rico to appeal such determination. Accordingly, in May 12th, 2016, the Honorable Court of Circuit of Appeal had resolved the Petitioner's claim on his favor and ordered the Department of Correction and Rehabilitation to reclassify the Petitioner to medium custody. *Id.* at pp. 2-3.

Plaintiff alleges that his due process of reclassification from maximum custody to medium custody were stopped and that he suffered false accusations and charges by prison officials that have stained his record of previous excellent record during confinement. On July 13, 2017, the Court stayed the instant case under Title III of PROMESA, *See* Docket Nos. 65-66. The case was reopened on February 25, 2020:

solely to the extent necessary to allow the Prepetition Action to proceed to the entry of judgment only with respect to the reclassification issue, provided, however, that the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the damages causes of action and the execution and enforcement of any monetary judgment against the Commonwealth or any other Title III debtor.
*See* Docket No. 174.

On February 13, 2017, Defendants, Commonwealth of Puerto Rico and Department of Correction and Rehabilitation, filed a *Motion to Dismiss*, arguing, that the Complaint must be dismissed because Plaintiff failed to state a cognizable claim under 42 U.S.C. § 1983, Plaintiff has failed to exhaust the available administrative remedies, and the monetary claim against defendants Commonwealth of Puerto Rico and Department of Correction and Rehabilitation is barred by the Eleventh Amendment Immunity. *See* Docket No. 38.

On February 17, 2017, Defendants, José Colón Cruz, Santiago Amaro Amaro, Kevin O. Rivera Quinones, and Denisse Z. Santiago Torres in their personal and official capacities filed a *Motion to Dismiss*, arguing the reasons mentioned *supra* and in addition, that the Defendants in their personal capacities are entitled to qualified immunity since they acted according to the law and in performance of their discretionary duties. *See* Docket No. 42. On March 13, 2017, Defendants, Maria de Leon Aponte, in her personal and official capacity filed a *Motion to Dismiss*¸ for the same reasons. *See* Docket No. 46. On April 25, 2017, Defendant, Héctor Cartagena Ramos, filed a *Motion for Joinder* to join the factual and legal arguments stated at Docket No. 42.

For the reasons set forth below, the Court **GRANTS** Defendants' *Motion to Dismiss* at Docket Nos. 38, 42, 46, and 56.

I.    **PROCEDURAL HISTORY**

Plaintiff was convicted of committing First Degree Murder and a violation to the Commonwealth's Weapons Laws and sentenced on December 27, 2016 to a life sentence. *See* Docket No. 2. He was imprisoned on maximum custody under the supervision of the Puerto Rico Department of Correction and

Rehabilitation ("DCR"). *Id*. at 2. The Classification and Treatment Committee determined that Plaintiff should remain under maximum custody, and Plaintiff appeared before the Honorable Circuit Court of Appeals of Puerto Rico to appeal that determination. *Id.* On May 12, 2016, the Honorable Court of Circuit of Appeal resolved Plaintiff's claim in his favor and ordered the DCR to reclassify him to medium custody. *Id.* at 3. Subsequently, DCR submitted a Motion for Reconsideration before the Honorable Court of Circuit of Appeal and on June 21, 2016, the Court denied the Motion for Reconsideration. *Id.* Plaintiff requested to several employees of the DCR to respond in accordance to the sentence of May 12, 2016 and to reclassify the Plaintiff to medium custody and transfer him to a medium custody institution. *Id.* However, they failed to respond in accordance to the May 12, 2016 sentence claiming that DCR's Headquarters Office had not approved it. *Id.* at 5. On July 20, 2016, Plaintiff activated the process of prisoner's grievance procedure when Plaintiff filed an Administrative Remedy Form and Request for Reconsideration. *Id.* at 5.

On August 4, 2016, while Plaintiff was receiving the service of recreation, Plaintiff engaged in a fight with another inmate to which a Correctional Officer filed a discipline incident report. *Id.* at 6. After the Disciplinary hearing, he was found guilty and sanctioned with three visits. *Id.* at 7. Then on September 12, 2016, the Committee of Classification and Treatment evaluated the case and refused to classify the Plaintiff to medium custody due to the disciplinary report. *Id.* Another Correctional Officer allegedly filed a disciplinary action against the Plaintiff for not signing the committee papers. *Id.*

## II. FACTUAL HISTORY

Defendants have argued several times that in the instant case, Plaintiff has not exhausted the available remedies. Amongst other things, the Court ordered the Plaintiff and the Commonwealth of Puerto Rico Department of Correction and Rehabilitation ("DCR") by presenting a petition for change or transfer of Plaintiff Mr. Nieves-Dominguez to another correctional institution and the Court ordered a new appointment *ad hoc* of Plaintiff's assigned caseworker as the current caseworker is a party in the instant case. *See* Docket No. 83.

As to the first order, the DCR proceeded to transfer Mr. Nieves-Dominguez from 296 Guayama Correctional Institution to 292 Bayamón Institution, which was the Plaintiff's request. *See* Docket No. 86. As to the second order, DCR also appointed Ms. Frances Guerra Báez as the new caseworker for Mr. Nieves-Dominguez. *See* Docket No. 90. Ms. Frances Guerra-Báez prepared a narrative report on the instant matters instead of the Ad Hoc Social Worker report, stating that "pursuant to the Organic Law of Corrections Administration, Law 102 of May 19, 2006 and to the Inmates Classification Handbook, the evaluation for a maximum custody inmate shall be made every six (6) months." *Id,* ¶ 5. Since Mr. Nieves-Dominguez's last evaluation took place on March 12, 2018, his next evaluation would be due on September, 2018. *Id,* at ¶ 6. Notwithstanding the explanation, Plaintiff filed a *Motion in Opposition* stating that the Commonwealth filed the letter as if it were a report. *See* Docket No. 98. Plaintiff also stated:

> Given that plaintiff exhausted all available remedies by taking his case successfully to the Commonwealth of Puerto Rico Court of Appeals and prevailed in a publish opinion granting him the right to a medium security classification and given that the federal record shows no other information or incident after said published opinion, there is simply no reason for the committee to unjustifiably and stubbornly deny plaintiff's right or liberty entitlement, and the 2-page letter does not provide any such explanation or justification to simply disregard and ignore a judicial order and precedential decision. *Id.*

After the judgment dated May 12, 2016, a Resolution from the Puerto Rico Court of Appeals dated October 20, 2016 was issued providing the following:

> Taking in consideration that our Judgment was dictated according to the situation of the inmate at that time. If after occurred new incidents that deserved to maintain the petitioner in maximum custody, it corresponds to that party, to question the new administrative decision, with regard to every case that determines to maintain him in maximum custody due to new offences. *See* Docket No. 105

On November 3, 2018, Plaintiff filed a pro se motion requesting the Court to issue an order to allow him to meet his attorney at Docket No. 113, and the Court ordered Defendants to inform the Court why Mr. Nieves has been denied his request to contact Mr. Barreto Cintron at Docket No. 115. Defendants submitted a Certification from the Department of Corrections and informed the Court that Plaintiff was allowed to communicate with his attorney at Docket No. 116. Again, on February 8, 2019, Plaintiff filed another pro se

4

motion stating he was not allowed to communicate with his lawyer at Docket No. 130. The Court granted the parties fourteen days to resolve this matter and inform the court via a joint status report. *See* Docket No. 132. On March 14, 2019, Plaintiff's counsel filed a joint motion stating that the Defendants have not been granting the inmate to effectively communicate with counsel. *See* Docket No. 141. Thereafter, Defendants filed a status report to clarify that they did not consent to the joint motion previously filed and regarding the situation with Plaintiff's communication with his appointed attorney. *See* Docket No. 142.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See *Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked

5

assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly* 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 45 (1st Cir. 2009).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken a true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n*

*v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

## IV. LEGAL ANALYSIS

Defendants' Motion to Dismiss at Docket No. 38, 42, 46, and 56 raise the following three arguments: (1) plaintiff failed to exhaust all administrative remedies, (2) eleventh amendment immunity, and (3) qualified immunity. In turn, the Court will discuss each argument separately.

**A. Exhaustion of Administrative Remedies**

Claims arising the Prison Litigation Reform Act of 1995 ("PRLA") require exhaustion of administrative remedies prior to filing suit in court. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law**,** by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The scope of Plaintiff's duty to exhaust administrative remedies is determined by the PRDC's internal grievance process or regulations. *Arroyo-Morales v. Administración de Corrección*, 207 F.Supp.3d 148, 151 (2016). The PRDC's Regulation No. 8583, titled *Regulation to Address the Application for Administrative Remedies Filed by Members of the Correctional Population* ("Regulation No. 8583"), details the grievance

7

procedure for PRDC inmates under custody. (*See* Rules XII-XV, Regulation No. 8583). The procedure basically consists of the following: 1) review of the prisoner's petition by an evaluator, (2) an appeal, following the evaluator's response, to the regional coordinator, (3) a motion to have the regional coordinator reconsider his decision, (4) an appeal to the program director if the prisoner is unsatisfied with the regional coordinator's resolution, and (5) a request for judicial review before the Puerto Rico Court of Appeals. *Arroyo*-Morales, 207 F.Supp 3d at 152. If an inmate fails to pursue even one of these steps, he has failed "to exhaust his administrative steps fully, as required by the PLRA." *Arroyo-Morales*, 207 F.Supp.3d at 152; *see also Figueroa-Vázquez v. Departamento de Corrección y Rehabilitación de Puerto Rico*, 2020 WL 710608, at 3–4 (D.P.R. 2020) (dismissing an inmate's claims since he did not file a reconsideration of his request nor did he comply with the final step of the exhaustion requirement, which was seeking judicial review of the Department's determinations).

According to Plaintiff, the Complaint filed in this case at Docket No. 2, unequivocally alleged that Plaintiff filed a grievance with the Department of Corrections and Rehabilitation and a Motion for Reconsideration. *See* Docket No. 2, pp. 3-4. Defendants' Motion to Dismiss states that, "Plaintiff activated the administrative grievance process by filing a *Request for Administrative Remedy* and subsequently a *Request for Reconsideration* to the DCR." *See* Docket No. 38 at p. 8, Docket No. 42 at p. 9, and Docket No. 46 at p 9. However, Defendants contend that Plaintiff failed to exhaust the administrative remedies as required by the PLRA because Plaintiff failed to file a petition for review with the Puerto Rico Court of Appeals after the internal grievance proceedings at the DCR were extinguished. According to Defendants, "after the DCR issued and notified a response or answer to the Plaintiff's requests for Remedy and subsequent Reconsideration, nevertheless, Plaintiff did not file a judicial review to the Court of Appeals as established in Regulation 8583." *See* Docket No. 38 at 8. On the other hand, Plaintiff contends that Plaintiff exhausted all the required administrative resources and was not compelled to seek judicial review before the Puerto Rico Court of Appeals. *See* Docket No. 178. The Court finds that PRDC's Regulation 8583 affords for judicial

8

review of a decision to an inmate that should have been exhausted prior to bringing suit; therefore, failing to comply with the final step of the exhaustion requirements.

**B. Eleventh Amendment Immunity**

Plaintiff in the instant case was a *pro se* litigant. As such, the Court affords his pleadings special consideration when evaluating Plaintiff's Motion. Specifically, courts are considerate of the obstacles that *pro se* litigants face, and while such litigants are not exempt from procedural rules, the allegations set forth in a pro se complaint are "[held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, (1972); *see also Dutil v. Murphy*, 550 F.3d 154, 158–59 (1st Cir. 2008) (citing *Boivin v. Black,* 225 F.3d 36, 43 (1st Cir.2000)). Plaintiff contends that it is evident that Defendants' invocation of the Eleventh Amendment is misplaced since it stems from an incorrect and self-serving reading of the allegations of the *pro se* Complaint filed in this case. *See* Docket No. 178

To this matter, Defendants argue that the Complaint must be dismissed because the Eleventh Amendment bars monetary damages against individuals in their official capacities. The Defendants are employees of the Department of Correction and Rehabilitation who are being sued both in their official and personal capacity. Specifically, the Department of Correction and Rehabilitation is a governmental instrumentality. As such, the Department of Correction and Rehabilitation is arm or alter ego of the Commonwealth and protected by the Eleventh Amendment. *See* Docket No. 38, 42, 46. *See also*, *Figueroa-Vázquez v. Departamento de Corrección y Rehabilitación de Puerto Rico*, 2020 WL 710608, at 3–4 (D.P.R. 2020).

> "States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "[F]or Eleventh Amendment purposes, the Commonwealth [of Puerto Rico] is treated as if it were a state; consequently, the Eleventh Amendment bars any suit brought against it." *Gotay–Sánchez v. Pereira*, 343 F.Supp.2d 65, 71–72 (D.P.R. 2004) (citing *Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935 (1st Cir. 1993)). Also, "[a]n administrative arm of the state is treated as the state itself for the purposes of the Eleventh Amendment, and it thus shares the same immunity." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 477 (1st Cir. 2009) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Since "the Department

9

of Corrections and Rehabilitation is an arm of the state, it cannot be sued in federal court, and hence, it is immune from suits under the Eleventh Amendment." *Johnson v. Departamento De Correccion y Rehabilitacion*, No. CV 16-1400 (DRD), 2017 WL 2589273, at *7 (D.P.R. June 14, 2017).

Accordingly, the Court finds that Plaintiff cannot maintain claims for monetary damages against the appearing Co-Defendants.

**C. Qualified Immunity**

According to the Defendants, Defendants in their personal capacities are entitled to qualified immunity since they acted according to the law and in performance of their discretionary duties. *See* Docket No. 42, p.2. The three-part test to determine whether an official is entitled to qualified immunity consists of the following: (1) whether the Plaintiff's allegations, if true, establish the violation of a constitutional right; (2) whether the right was clearly established at the time of the alleged violation; (3) if both these questions are answered in the affirmative, the third inquiry is whether an objectively reasonable official, similarly situated, would have believed that the challenged conduct violated that stablished constitutional right. *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir. 2001).

Defendants argue in their Motion to Dismiss, "that they were not in the position to reclassify the Plaintiff to medium custody and transfer him to a medium custody institution after the sentence of May 12, 2016, first, due to the DCR intentions of filing a Motion for Reconsideration. Second, as stated in the Complaint, because after the DCR received the notification regarding the determination of the Motion for Reconsideration, the agency was advised by Mrs. Gloria Robinson, General Attorney of Department of Justice, to wait for the Court's Order official document before taking any action. (Docket No. 2, p. 5 ¶¶ 4.9). Finally, because, while the DCR was waiting for the Final Order and Resolution of the Court of Appeals, on August 4, 2016 Mr. Nieves engaged in a fight with another inmate which resulted in the determination made by the Classification and Treatment Committee of maintaining the plaintiff in maximum custody." *See* Docket No. 42 at 13 and 46 at 14.

According to the complaint, the DCR and the Classification Committee refused to comply with the mandate of the Puerto Rico Court of Appeals and Plaintiff filed a grievance with the DCR authorities, who again refused to comply with the judgment that had been entered in Plaintiff's favor. *See* Docket No.2, at pp. 4-5. Plaintiff further alleges that, on August 4, 2016, while he was enjoying his daily recreation, Officer Jose Colon Cruz approached him and told him "You won the case trough the Court, but you won't go to medium [custody] because I will write you an incident report of discipline that will get you stuck here." *Id*, at p. 5. Plaintiff then alleges that shortly thereafter officer Colon Cruz intervened with Plaintiff and submitted a disciplinary report and that, as a result, Sergeant Cartagena denied Plaintiff his visit the following day notwithstanding the fact that he had not been taken before a hearing examiner and had yet been found guilty of the disciplinary violation while Sergeant Cartagena stated: "that happens to you because you keep writing against Correction." *Id*, at p. 6. The complaint expressly alleges that Sergeant Cartagena's statement "demonstrates there is a personal agenda against the [Plaintiff] specifically to interrupt the Court's order to not reclassify him to medium." *Id*. The complaint then alleges that the Classification Committee denied Plaintiff's reclassification to medium custody using as an excuse the disciplinary report submitted by Officer Colon Cruz and that immediately thereafter Officer Kevin Rivera Quiñones concocted another false disciplinary charge when Plaintiff declined to sign the Classification Committee's decision even though Plaintiff was not legally required to do so. *Id*, at p. 7. As a result of the actions and omissions of the individual defendants, Plaintiff alleges that he "has suffered many damages. In first place his due process of reclassification to medium custody was stopped and blighted. Secondly, the [Plaintiff] suffered false accusations and charges against him that had stained an impeccable record of excellent behavior during his confinement." *Id*.

Plaintiff contends in his Opposition that, "[he] not only asserts a *due process claim* against the individual defendants for not having complied with the Judgment of the Puerto Rico Court of Appeals and for having deprived him of his visitation rights but also a *retaliation claim* as a result of having exercised his constitutional right to petition the government for redress of grievances." *See* Docket No. 178 at 7. Specifically, "that the right of an inmate to be free from retaliation for having asserted his constitutional rights under the Petition Clause was clearly established as of 2016 when the individual defendants retaliated against the Plaintiff for having won the case in the Puerto Rico Court of Appeals and for subsequently having made use of the internal grievance procedure in an attempt to force them to comply with the judicial mandate." *Id.* at 8. In sum, Plaintiff argues that the individual defendants may no invoke a qualified immunity defense because Plaintiff has alleged sufficient facts for the Court to infer that the individual defendants retaliated against him for having asserted his First Amendment rights and that the right to be free from retaliation was clearly established at the time that the constitutional violation occurred.

The Court finds that Defendants are entitled to qualified immunity due to Plaintiff's failure to state a cause of action for violation of a constitutional right, to wit his equal protections rights. *See* Docket No. 42, 46, and 56. Similarly, Plaintiff's argument that the Defendants' actions constituted retaliation under the First Amendment is not included as part of the Complaint at Docket No. 2 and instead is brought more than three years later in response to Defendants' argument of qualified immunity. *See* Fed. R. Civ. P. 15. Hence, the first Amended Complaint, although impressive as to a serious violation is lost due to failure to file a timely cause of action within a year.

## V. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendants' *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*, at Docket No. 38, 42, 46, and 56 and Plaintiff's claims against the Commonwealth and the DCR are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of April, 2020.

> */S/ Daniel R. Domínguez*
> United States District Judge
> U.S. District Judge